Barcode:4133231-01 C-570-091 REM - Remand  -  Slip Op. 21-63

C-570-091<br>
Remand: Slip Op. 21-63<br>
**Public Document**<br>
E&C Office III:  BCQ

June 14, 2021

**FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**
*Trans Texas Tire, LLC and Zhejiang Jingu Company Limited v. United States*
Consol. Court No. 19-00189; Slip Op. 21-63 (CIT 2021)

**I.    SUMMARY**

The Department of Commerce (Commerce) prepared these final results of redetermination in accordance with the May 18, 2021, order of the U.S. Court of International Trade (CIT or the Court), in *Trans Texas Tire, LLC and Zhejiang Jingu Company Limited v. United States*, Consol. Court No. 19-00189 (CIT May 18, 2021) (*Remand Order*).  These final results concern the final determination of the countervailing duty (CVD) investigation on certain steel wheels 12 to 16.5 inches in diameter from the People's Republic of China (China).[1]

In its *Remand Order*, the Court determined that, while Commerce adequately explained its decision to include in the final scope of the investigation steel trailer wheels coated in chrome through a Physical Vapor Deposition (PVD) process (PVD chrome wheels), countervailing duties on PVD chrome wheels should not have been retroactively imposed back to the date of Commerce's preliminary determination.[2]  In particular, the Court held that retroactive assessment of countervailing duties was impermissible because Commerce did not provide adequate notice of the inclusion of PVD chrome wheels prior to the Final Scope Memo,[3] and,

---

[1] *See Certain Steel Trailer Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China:  Final Affirmative Countervailing Duty Determination, and Final Affirmative Determination of Critical Circumstances*, 84 FR 32723 (July 9, 2019) (*Final Determination*).
[2] *See Remand Order* at 16 and 20-21.
[3] *See* Memorandum, "Certain Steel Wheels from the People's Republic of China:  Final Scope Decision Memorandum for the Final Antidumping Duty and Countervailing Duty Determinations," dated July 1, 2019 (Final Scope Memo).

thus, remanded the *Final Determination* for Commerce to reformulate its instructions consistent with the *Remand Order*.[4]

As set forth in detail below, consistent with the Court's *Remand Order*, should this final remand redetermination be sustained by the Court, we intend to issue an amended final determination to clarify the date of imposition of countervailing duties to be the date of publication of the final determination and to issue instructions to U.S. Customs and Border Protection (CBP) with respect to Trans Texas Tire LLC (Trans Texas) and Zhejiang Jingu Company Limited (Jingu) providing that entries of PVD chrome wheels entered, or withdrawn from warehouse, for consumption between February 25, 2019, and June 24, 2019, are excluded from the scope of the investigation.[5]  These instructions give effect to the Court's holding that "reasonably informed importers were not provided clear or meaningful notice of the inclusion of PVD chrome wheels until the publication of the Final Scope Memo."[6]

## II.    BACKGROUND

As initiated, the scope of the underlying investigation excluded "certain on the road steel wheels that are coated entirely with chrome."[7]  This scope exclusion remained unchanged in the CVD preliminary determination published on February 25, 2019.[8]  Subsequent to the *Preliminary Determination*, though prior to the preliminary determination in the less-than-fair-

---

[4] *See Remand Order* at 21-22 and 26.
[5] Draft versions of the instructions we intend to issue to CBP are included at Attachment A (Jingu) and B (Trans Texas), *infra*.  These draft instructions were previously released to parties for comment with the draft redetermination.  *See* Memorandum, "Release of Draft of Changes to Customs Instructions Pursuant to Court Remand," dated June 3, 2021 (Remand Customs Instructions Memo).  The petitioner, Trans Texas, and Jingu submitted comments indicating that the draft instructions included in the Remand Customs Instructions Memo comply with the Court's remand order; accordingly, the instructions provided at Attachments A and B herein are materially unchanged from those released in the Remand Customs Instructions Memo.
[6] *See Remand Order* at 21.
[7] *See Certain Steel Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China: Initiation of Countervailing Duty Investigation*, 83 FR 45100 (September 5, 2018) (Initiation Notice).
[8] *See Certain Steel Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination*, 84 FR 5989 (February 25, 2019) (*Preliminary Determination*) at Appendix 1.

value (LTFV) investigation, Dexstar Wheel Division of Americana Development, Inc. (the petitioner) filed additional scope comments regarding the exclusion of chrome wheels, specifically requesting that Commerce confirm that the chrome wheel exclusion did not include PVD chrome wheels.[9] However, due to the proximity of the date on which the petitioner's comments (and relevant rebuttal comments) were received relative to the statutory deadline for the issuance of the LTFV preliminary determination, Commerce deferred consideration of the petitioner's comments to the final determinations of the LTFV and CVD investigations.[10] Accordingly, the scope language in Commerce's *Initiation Notice* and *Preliminary Determination* did not explicitly address whether the scope exclusion for steel wheels coated entirely with chrome covered PVD chrome wheels.

Based on the petitioner's scope comments, Commerce solicited additional information with respect to PVD chrome wheels, and parties provided further information and argumentation in response. Commerce then evaluated the record with respect to this issue for the first time in its Final Scope Memo, finding with respect to PVD chrome wheels that:

> based on evidence and information in the Petition, we find that the petitioner intended the exclusion to cover electroplated chrome wheels and was not intended to cover other types of chrome-adhering processes; nor were other types of chrome adhering processes, such as PVD, considered anywhere on the record prior to the respondent party's clarification request, in which case the petitioner promptly and consistently maintained its intent with respect to the chrome exclusion language. Thus, we do not find that limiting the exclusion to electroplating expands the scope, as the exclusion was never meant to cover PVD chrome wheels and, therefore, carving out an exception for PVD wheels from the exclusion is a clarification and not an impermissible expansion of the scope.[11]

---

[9] *See* Petitioner's Letter, "Certain Steel Wheels (12 to 16.5 Inches in Diameter) from China: Petitioner's Clarification of the Exclusion of Chrome Wheels," dated March 28, 2019.
[10] *See* Memorandum, "Certain Steel Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China: Preliminary Scope Decision Memorandum," dated April 15, 2019.
[11] *See* Final Scope Memo at 15.

Accordingly, the scope of the *Final Determination* and resulting CVD order provided the following with respect to chrome-coated wheels:

> Excluded from this scope are the following:… (3) certain on-the-road steel wheels that are coated entirely in chrome. This exclusion is limited to chrome wheels coated entirely in chrome and produced through a chromium electroplating process, and does not extend to wheels that have been finished with other processes, including, but not limited to, Physical Vapor Deposition (PVD){.}

Further, in the Final Scope Memo, Commerce noted that "the clarification that the exclusion in the scope for chrome wheels does not cover PVD chrome wheels is a clarification, based on the petitioner's original intent in the Petition, not an expansion of the scope.  Thus, PVD chrome wheels are subject to duties from the start of suspension of liquidation, which was the preliminary determinations," and declined to revise the scope language to specify that the clarification of the exclusion for chrome wheels applies only to entries following the *Final Determination*.[12]

Trans Texas and Jingu challenged Commerce's scope determination before the CIT, arguing that Commerce unlawfully expanded the scope of the CVD investigation (and resulting order) to include PVD chrome wheels.  Trans Texas and Jingu further argued that, even if the inclusion of PVD chrome wheels was lawful, Commerce erred by retroactively assessing CVDs on PVD chrome wheel imports back to the date of its *Preliminary Determination*.[13]

In the *Remand Order*, the Court held that Commerce provided a reasonable explanation for its inclusion of PVD chrome wheels and its understanding of the petitioner's intent.[14]  The Court further rejected plaintiffs' argument that Commerce failed to comply with the statute in

---

[12] *Id.* at 16.
[13] Trans Texas also claimed that the adverse facts available rate assigned to its supplier was unsupported by substantial evidence and not in accordance with law.  The CIT sustained this aspect of the CVD final determination. *See Remand Order* at 22-26.
[14] *See Remand Order* at 16.

clarifying the scope in this manner.[15]  Accordingly, the Court sustained Commerce's determination to clarify that PVD chrome wheels are within the scope of investigation (and resulting order) as supported by substantial evidence and in accordance with law.[16]

However, the Court remanded Commerce's determination to assess duties on PVD chrome wheels retroactive to the date of the *Preliminary Determination*.  The Court held that Commerce is required by its regulations to provide notice of the initiation, preliminary determination, and final determination of investigation through the publication of relevant notices in the *Federal Register*, and that such publication provides legal notice of Commerce's investigations and the potential liability that may result to importers.[17]  The Court further held that the *Initiation Notice* and *Preliminary Determination*, as published, excluded from the investigation certain on-the-road steel wheels that are coated entirely with chrome and it was not until the publication of the Final Scope Memo and *Final Determination* that Commerce clarified that PVD chrome wheels (despite being coated entirely with chrome) did not fall within the limits of the exclusion.[18]  The Court held that although record evidence regarding the manufacture of the excluded chrome wheels ultimately supported Commerce's determination that PVD chrome wheels were not intended to be covered by the chrome wheel exclusion, none of this information was included in Commerce's published *Initiation Notice* or *Preliminary Determination*.  As a result, the Court held that exclusion of wheels "coated entirely with chrome" was insufficient to provide importers of PVD chrome wheels with notice of their product's inclusion and that "reasonably informed importers were not provided clear or

---

[15] Id.
[16] *Id*.
[17] *Id*. at 18 (citing, *e.g.*, *Target Corp. v. United States*, 33 CIT 760, 779–80, 626 F. Supp. 2d 1285, 1301 (2009), aff'd, 609 F.3d 1352 (Fed. Cir. 2010)).
[18] *Id*. at 20-21.

meaningful notice of the inclusion of PVD chrome wheels until the publication of the Final Scope Memo and *Final Determination*."[19]

The Court thus held that the retroactive assessment of countervailing duties on PVD chrome wheels prior to the date on which importers received adequate notice of their products' inclusion in the scope of an CVD investigation was unfair and that "duties should have been assessed from the date of the Final Scope Memo, when Plaintiffs first received notice that PVD chrome wheels were not subject to the exclusion."[20] The Court directed Commerce on remand to "reformulate its instructions consistent with this opinion."[21]

### III.   DRAFT REDETERMINATION AND COMMENTS RECEIVED

Commerce issued its Draft Redetermination, including draft instructions to CBP, on June 3, 2021, and provided an opportunity for interested parties to comment on the Draft Redetermination and accompanying instructions.[22] On June 8, 2021, the petitioner, Trans Texas, and Jingu timely submitted comments, with each party noting that the Draft Redetermination and instructions comply with the Court's order, without further substantive comment.[23] As all parties agree that the Draft Redetermination and accompanying instructions comply with the Court's order, our final analysis provided immediately below remains materially unchanged from the

---

[19] *Id.* at 21.
[20] *Id.* at 21-22.
[21] *Id.* at 26.
[22] *See* Draft Results of Redetermination Pursuant to Court Remand, *Trans Texas Tire, LLC and Zhejiang Jingu Company Limited v. United States*, Consol. Court No. 19-00188; Slip Op. 21-62 (CIT 2021), dated June 3, 2021 (Draft Redetermination), and accompanying Remand Customs Instructions Memo.
[23] *See* Petitioner's Letter, "Petitioner's Comments on Draft Redetermination," dated June 8, 2021 ("Petitioner agrees that Commerce's revised instructions comply with the Court's order"); Trans Texas's Letter, "TTT's Comments on Draft Remands and Draft Instructions," dated June 8, 2021 ("TTT supports the Draft Remands and Draft Instructions, which comply with CIT instruction for the Department to 'reformulate its instructions'… Accordingly, TTT requests that the Department finalize its Draft Remands and Draft Instructions when submitting to the CIT on June 17, 2021."); and Jingu's Letter, "Comments on the Department's Draft Results of Redetermination Pursuant to Court Remand," dated June 8, 2021 ("The Department's Draft Instructions to U.S. Customs and Border Protection ('CBP') are consistent with the CIT's instructions. Accordingly, the Department should finalize its Draft Remand and Draft Instructions to the CIT").

Draft Redetermination. Additionally, the draft instructions that we released for comment along with the Draft Redetermination are unchanged in this final remand redetermination, except that we have a made minor clarifying edits to paragraph 3 of each instruction.[24]

### IV.   ANALYSIS

The Court has directed Commerce to reformulate its instructions to CBP such that duties are assessed with respect to imports of PVD chrome wheels effective from the date on which plaintiffs received adequate notice that PVD chrome wheels were included in the scope of the investigation. While we respectfully disagree that plaintiffs did not have adequate notice of their product's inclusion at the time of the *Preliminary Determination*, we have, nonetheless, prepared draft instructions to conform with the Court's *Remand Order*. Below, we provide additional explanation on the draft instructions included in Attachments A and B.

As an initial matter, while the Court's *Remand Order* provides that duties on PVD chrome wheels "should have been assessed from the date of the Final Scope Memo," our draft instructions are not based on the date of the Final Scope Memo or on publication of the *Final Determination* in the *Federal Register*. This is because, by statute, countervailing duties following an affirmative preliminary determination may remain in effect for a maximum of four months.[25] After this "provisional measures" period,[26] the CVD investigation enters a gap period during which Commerce instructs CBP to discontinue the suspension of liquidation on entries of subject merchandise until the date on which the ITC publishes its affirmative final injury

---

[24] *See* Attachment A (Draft Instructions for Jingu) and B (Draft Instructions for Trans Texas). In particular, Commerce has edited paragraph 3 of the draft instructions to clarify that while suspension of liquidation is to remain in effect during the appeals process, suspension on relevant entries should be at a zero percent cash deposit rate consistent with our final remand redetermination.
[25] *See* section 703(d) of the Act.
[26] *See* 19 CFR 351.205 ("A preliminary determination in an antidumping or countervailing duty investigation constitutes the first point at which {Commerce} may provide a remedy (sometimes referred to as 'provisional measures') if {Commerce} preliminarily finds that dumping or countervailable subsidization has occurred.")

determination.[27]  In the instant investigation, provisional measures expired on June 24, 2019 (*i.e.*, before issuance of the Final Scope Memo and publication of the CVD *Final Determination*). Therefore, suspension of liquidation was not in effect as a matter of law at the time of the *Final Determination* and all imports of subject merchandise entered without regard to CVD duties until August 28, 2019, when suspension resumed following publication of the ITC's final affirmative injury determination.[28]  Our draft instructions are, thus, limited to the provisional measures period between February 25, 2019, and June 24, 2019, which is the only period prior to the *Final Determination* during which countervailing duties were imposed on PVD chrome wheels.[29] These draft instructions provide that imports of PVD chrome wheels entered, or withdrawn from warehouse, for consumption during the provisional measures period between February 25, 2019 and June 24, 2019, are outside the scope of the investigation.[30]

Additionally, while the Court has directed Commerce to "reformulate its instructions" based on the Court's opinion, and while we have complied with the Court's holding, such instructions will not be issued immediately following the filing of the final remand redetermination, nor will we immediately lift suspension of liquidation for any entries found to be out-of-scope as a result of the Court's holding.  In this respect, the U.S. Court of Appeals for the Federal Circuit's (the Federal Circuit) decisions in *Timken Co. v. United States* (*Timken*)[31] and *Diamond Sawblades Mfrs. Coalition v. United States* (*Diamond Sawblades*)[32] are controlling.  In these cases, the Federal Circuit held that, pursuant to sections 516A(c) and (e) of the Act, Commerce must publish a notice of final court decision that is not "in harmony" with

---

[27] *See generally* section 707(a) of the Act and 19 CFR 351.212(d).
[28] *See Final Determination* at "Continuation of Suspension of Liquidation"; *see also* CBP Message 9248302 (resuming suspension effective as of publication of ITC final determination).
[29] *See* Attachments A and B.
[30] *Id*.
[31] *See* 893 F.2d 337, 341 (Fed. Cir. 1990).
[32] *See* 626 F.3d 1374, 1381-82 (Fed. Cir. 2010).

Commerce's determination (often referred to as a "*Timken* notice") and must suspend liquidation of entries pending a "conclusive" court decision. The Federal Circuit has further recognized that "{t}he statute provides that, '{u}nless such liquidation is enjoined by the court,' 'entries . . . shall be liquidated in accordance with the determination of the Secretary' if entered 'on or before the {effective} date of the *Timken* notice.'"[33]

Therefore, Commerce has prepared draft instructions to CBP which it intends to issue: (1) should the Court issue a final decision in which it affirms Commerce's final remand redetermination; and (2) after Commerce has issued its "Notice of Court Decision Not in Harmony With the Final Countervailing Duty Determination and Notice of Amended Final Determination" (*i.e.*, *Timken* notice) accordingly.[34] These draft instructions direct CBP to continue to suspend certain unliquidated entries, as discussed below, but give effect to the *Remand Order* by allowing the importer to seek refunds pursuant to 19 U.S.C. 1520(a)(4). Accordingly, Commerce will order the continuation of the suspension of liquidation of the entries at issue pending expiration of the period of appeal or, if appealed, pending a final and conclusive court decision.

As reflected in the draft instructions released along with this final remand redetermination, Commerce intends to instruct CBP that all relevant entries of PVD chrome wheels which were entered or withdrawn from warehouse, for consumption on or after February 25, 2019 (the date of publication of the *Preliminary Determination* in the *Federal Register*) up to and including June 24, 2019 (the day on which CVD provisional measures expired), and which remained unliquidated as of the date of the relevant preliminary injunction (September 4,

---

[33] *See Capella Sales & Services Ltd. v. United States*, 878 F.3d 1329, 1333-34 (Fed. Cir. 2018) (citing section 516A(c)(1) ("{W}e conclude that Capella's pre-*Timken* notice entries not enjoined by court order under § 1516a(c)(2) may properly be 'liquidated as entered' in accordance with the Secretary's final determination."))
[34] *See* Attachments A and B.

2020, in the case of merchandise produced and/or exported by Jingu; and November 27, 2019, in the case of merchandise produced by Xingmin Intelligent Transportation Systems (Group) and imported by Trans Texas) will remain suspended pending a final and conclusive court decision. However, these instructions further allow for CBP to grant a refund of the cash deposits paid on such entries at the request of the importer prior to liquidation.[35]

V.  **FINAL RESULTS OF REDETERMINATION**

We have prepared these final results of redetermination and accompanying draft instructions in accordance with the Court's *Remand Order*. Should the Court sustain these final results of redetermination, we intend to amend our final determination by issuing a Notice of Court Decision Not in Harmony With the Final Countervailing Duty Determination and Notice of Amended Final Determination, and will issue appropriate customs instructions to CBP, as described in detail above and included in Attachments A and B. Commerce will continue the suspension of liquidation of the entries at issue pending expiration of the period of appeal or, if appealed, pending a final and conclusive court decision.

Dated: June 14, 2021

6/14/2021

X _____

Signed by: CHRISTIAN MARSH

_____
Christian Marsh
Acting Assistant Secretary
  for Enforcement and Compliance

---

[35] The injunctions obtained by Trans Texas and Jingu are not limited to PVD wheels and they cover a broader period than the time between the *Preliminary Determination* and the *Final Determination*. The draft instructions prepared for this remand redetermination are not intended to address all possible wheels covered by the injunctions. Once there is a final and conclusive court decision in this action, we intend to issue instructions dissolving the injunctions and assessing duties as appropriate on merchandise covered by the injunctions.

Barcode:4133231-01 C-570-091 REM - Remand  -  Slip Op. 21-63

# Attachment A

(Draft of CBP Instructions - Jingu)

Filed By: Brendan Quinn, Filed Date: 6/15/21 10:31 AM, Submission Status: Approved

Re: Notice of an amended final determination of the countervailing duty investigation on certain steel trailer wheels 12 to 16.5 inches in diameter from the People's Republic of China with respect to Zhejiang Jingu Company Limited (C-570-091)

1. On xx/xx/2021, the U.S. Court of International Trade (CIT) sustained the Final Redetermination issued by Commerce pursuant to Trans Texas Tire, LLC and Zhejiang Jingu Company Limited v. United States (CIT Consol. Ct. No. 19-00189). As a result, Commerce published in the *Federal Register* (xx FR xxxx) on xx/xx/xxxx, with an effective date of xx/xx/xxxx, the Notice of Court Decision Not in Harmony With the Final Countervailing Duty Determination and Notice of Amended Final Determination.

2. As a result of the CIT's final decision, entries of certain steel trailer wheels 12 to 16.5 inches in diameter coated in chrome through a Physical Vapor Deposition (PVD) process, which: a) were the subject of the U.S. Department of Commerce's final determination in Certain Steel Trailer Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China:  Final Affirmative Countervailing Duty Determination, and Final Affirmative Determination of Critical Circumstances, 84 FR 32723 (July 9, 2019); b) were produced and/or exported from the People's Republic of China by Zhejiang Jingu Company Limited; c) were entered, or withdrawn from warehouse, for consumption on or after 02/25/2019 up to and including 06/24/2019; and d) remain unliquidated as of 09/04/2020 are outside of the scope of the countervailing duty order on certain steel trailer wheels from China.

3. CBP is directed to suspend or continue to suspend liquidation of such entries described in paragraph 2 at a zero percent cash deposit rate during the pendency of the appeals process until specific liquidation instructions are issued.

4. Title 19 U.S.C. 1520(a)(4) authorizes refunds prior to liquidation whenever an importer of record declares or it is ascertained that excess duties, fees, charges, or exactions have been deposited or paid. In accordance with 19 U.S.C. 1520(a)(4), CBP is authorized to grant a refund, if requested by the importer, of cash deposits for entries described in paragraph 2.

5. The injunctions with consol. court number 19-00189, discussed in message 0254401, dated 09/10/2020 and message 0349407, dated 12/14/2020, with respect to entries described in paragraph 2 remain in effect.

6. If there are any questions by the importing public regarding this message, please contact the Call Center for the Office of AD/CVD Operations, Enforcement and Compliance, International Trade Administration, U.S. Department of Commerce at (202) 482-0984. CBP ports should submit their inquiries through authorized CBP channels only. (This message was generated by OIII:BQ.)

7. There are no restrictions on the release of this information.

Kristin Weaver

Barcode:4133231-01 C-570-091 REM - Remand   -   Slip Op. 21-63

# Attachment B

(Draft of CBP Instructions – Trans Texas)

Filed By: Brendan Quinn, Filed Date: 6/15/21 10:31 AM, Submission Status: Approved

Barcode:4133231-01 C-570-091 REM - Remand  -  Slip Op. 21-63

Re: Notice of an amended final determination of the countervailing duty investigation on certain steel trailer wheels 12 to 16.5 inches in diameter from the People's Republic of China with respect to Trans Texas Tire LLC and Xingmin Intelligent Transportation Systems (Group) (C-570-091)

1. On xx/xx/2021, the U.S. Court of International Trade (CIT) sustained the Final Redetermination issued by Commerce pursuant to Trans Texas Tire, LLC and Zhejiang Jingu Company Limited v. United States (CIT Consol. Ct. No. 19-00189).  As a result, Commerce published in the *Federal Register* (xx FR xxxx) on xx/xx/xxxx, with an effective date of xx/xx/xxxx, the Notice of Court Decision Not in Harmony With the Final Countervailing Duty Determination and Notice of Amended Final Determination.

2. As a result of the CIT's final decision, entries of certain steel trailer wheels 12 to 16.5 inches in diameter coated in chrome through a Physical Vapor Deposition (PVD) process, which: a) were the subject of the U.S. Department of Commerce's final determination in Certain Steel Trailer Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China:  Final Affirmative Countervailing Duty Determination, and Final Affirmative Determination of Critical Circumstances, 84 FR 32723 (July 9, 2019); b) were produced by Xingmin Intelligent Transportation Systems (Group) and imported by Trans Texas Tire LLC; c) were entered, or withdrawn from warehouse, for consumption on or after 02/25/2019 up to and including 06/24/2019; and d) remain unliquidated as of 11/27/2019, are outside of the scope of the countervailing duty order on certain steel trailer wheels from China.

3. CBP is directed to suspend or continue to suspend liquidation of such entries described in paragraph 2 at a zero percent cash deposit rate during the pendency of the appeals process until specific liquidation instructions are issued.

4. Title 19 U.S.C. 1520(a)(4) authorizes refunds prior to liquidation whenever an importer of record declares or it is ascertained that excess duties, fees, charges, or exactions have been deposited or paid. In accordance with 19 U.S.C. 1520(a)(4), CBP is authorized to grant a refund, if requested by the importer, of cash deposits for entries described in paragraph 2.

5. The injunctions with consol. court number 19-00189, discussed in message 9333301, dated 11/29/2019 and message 0239407, dated 08/26/2020, with respect to entries described in paragraph 2 remain in effect.

6. If there are any questions by the importing public regarding this message, please contact the Call Center for the Office of AD/CVD Operations, Enforcement and Compliance, International Trade Administration, U.S. Department of Commerce at (202) 482-0984. CBP ports should submit their inquiries through authorized CBP channels only. (This message was generated by OIII:BQ.)

7. There are no restrictions on the release of this information.

Kristin Weaver